57  389
158s  641

### Wolf Goldstein v. Marks Nathan.

1. PARTNERSHIP—*Participation in Contingent Profits.*—An agreement to " participate " in contingent profits does not mean to participate in equal proportions, when it is uncertain from the whole contract that such was the intention of the parties.

2. STATUTE OF FRAUDS—*As a Defense—Demurrer.*—The benefit of the statute of frauds as a defense can be taken by demurrer, where it affirmatively appears from the bill that the agreement relied upon is not evidenced by a writing duly signed.

3. SAME—*What is Within.*—To confer upon a party a lawful right to share in the contingent profits arising from an existing ownership of land and at a stipulated value, and a subsequent sale of it, at a price to be ascertained by its future value, is to give him an interest in or concerning the land itself, and is within the statute of frauds.

4. SAME—*What it Embraces.*—The statute of frauds extends to and embraces equitable as well as legal interests in land—all agreements by which rights already acquired in real estate under deeds are enlarged or qualified.

Memorandum.—In equity. Error to the Circuit Court of Cook County; the Hon. SAMUEL P. McCONNELL, Judge, presiding. Heard in this court at the October term, 1894, and affirmed. Opinion filed January 28, 1895.

BRIEF OF PLAINTIFF IN ERROR, MOSES, PAM & KENNEDY,
ATTORNEYS.

An oral contract by two or more persons to purchase real
estate for their joint benefit, is within the statute, and
whether a partnership can be created by parol for the pur-
pose of buying and selling lands for profit, has been a
mooted question, and a very considerable conflict exists, with
a decided weight of authority in the affirmative. Speyer v.
Desjardins, 144 Ill. 641; Browne on the Statute of Frauds
(4th Ed.), section 259, *et seq.* and notes, and see also cited in
notes to pages 700 to 704 of Vol. 8 of Am. and Eng. Ency.
of Law; Babcock, Assignee, v. Read, 99 N. Y. 609; Trapha-
gen v. Burt, 67 N. Y. 30; Coleman v. Eyre, 45 N. Y. 39;
2 Vesey, 696; Bissell v. Harrington, 18 Hun (N. Y.) 81;
Bunnel v. Taintor's Administrator, 4 Conn. 568; Marsh v.
Davis, 33 Kan. 326; Holmes v. McCrey, 51 Ind. 358;
Chester v. Dickerson, 54 N. Y. 1; Bruce v. Hastings, 41
Vt. 380; Trowbridge v. Wetherbee, 11 Allen (Mass.) 361;
Brinley v. Kupfer, 6 Pick. 179; 8 American & English Enc.,
700–704.

BRIEF OF DEFENDANT IN ERROR, MORAN, KRAUS & MAYER,
ATTORNEYS.

Section 2 of our Statute of Frauds and Perjuries, Chap.
59, Starr & Curtis, provides that "No action shall be
brought to charge any person upon any contract for the
sale of lands, tenements or hereditaments, or any interest in
or concerning them, for a longer term than one year, unless
such contract, or some memorandum or note thereof, shall
be in writing, and signed by the party to be charged there-
with, or some other person thereunto by him lawfully au-
thorized in writing, signed by such party."

It is to be noted that this statute covers not only con-
tracts for the sale of lands or any interest in them, but also
any interest concerning them.

Browne on St. of Frauds (4th Ed.), Sec. 266, says:

"An agreement by which a party shall ultimately be
bound to sell or purchase land, is, of course, as much within

the statute as if he bound himself immediately to do so." The statute extends to any agreement by which rights already acquired in real estate under a deed are enlarged or qualified.  Browne in Sec. 267; Irwin v. Hubbard, 49 Ind. 350; Smith v. Dunham, 3 Sumner, 435; Miller v. Kendig, 55 Ia. 174.

The statute to prevent frauds and perjuries applies to an agreement between a purchaser of land and a third person, that such third person should be admitted as a partner in the purchase, the proof of such agreement being only parol evidence of subsequent declarations and acknowledgments by the parties.  Henderson v. Hudson, 1 Munf. (Va.), 510; Walker v. Herring, 21 Grat. (Va.) 678; Fischli v. Du-Maresly, 3 A. K. Marsh. (Ky.) star p. 24, (947); Bird v. Morrison, 12 Wis. 153; Caddick v. Skidmore, 2 DeG. & J. 52.

Mr. Justice Shepard delivered the opinion of the Court.

To the bill filed in this cause, the Circuit Court sustained a demurrer, and dismissed the bill for want of equity, and from such action this suit is prosecuted.

The bill alleges that on June 11, 1890, and prior thereto, the complainant and the defendant were, respectively, owners of separate lots of land in the same subdivision in the city of Chicago; that each party paid for his own lot, and held a deed therefor in his own name which was recorded; that they had purchased said lots, respectively, with the knowledge and encouragement of each other, and for speculation incident to the location of the site of the World's Columbian Exposition; that the complainant paid $105 a front foot for his lot and the defendant paid $100 a front foot for his lot, and that each lot possessed a frontage of fifty feet; that the parties being so possessed of and owning said lots severally, on June 1, 1890, the complainant proposed to the defendant "that they should make a joint venture or partnership in reference to said two lots, and that they should participate in the net proceeds to be derived from the sale of them; that one of said lots should be sold in a very short time, * * * and the other lot

should be held longer, to be sold as soon as the site of said exposition would be located and selected, which location was expected within a very few months thereafter; defendant, after due consideration, accepted said proposition, and they agreed with each other to participate in the net profits or losses arising out of the purchase and ownership of said two lots for the aforesaid purposes; that several attempts were made by orator and defendant, upon the suggestion of orator, to evidence said agreement in writing, but  *   *   * the agreement was not written out, and by common consent between orator and defendant, the writing out of the agreement was abandoned, and the orator rested securely on the oral agreement which the defendant repeatedly acknowledged by consulting with orator in reference to the sale of his lot, which, by agreement between the parties, was to be sold first; that in accordance with said arrangement, and after consultation with the defendant, and relying upon said agreement, orator, with the knowledge, consent and approval of the defendant, sold his lot  *   *   *  by deed dated June 30, 1890,  *   *   *  and received therefor $175 per foot, thus realizing a profit of $3,500 from said lot; that upon the making of the agreement for the sale of said lot, and at the final conclusion of the sale, orator consulted with the defendant and procured his agreement and consent to the sale of the lot on or about July 14, 1890; *   *   * · that as soon as said sale was closed and orator had received the proceeds thereof, he applied to the defendant and offered to divide with him the net proceeds as they had agreed to do, but defendant refused to recognize the agreement, with the evident purpose not to adhere to it, because the value of his lot was increasing from day to day; *   *   *  that orator always insisted in conversations with the defendant that he must keep his engagement with him, and that he would insist upon an equal division of the profits whenever he should sell his lot; that on the 12th of February, 1891, or thereabouts, Nathan sold his lot  *   *   * and realized $270 per front foot, a profit of $170 per foot; that as soon as said transaction was completed, your orator again demanded of defendant that he come to an ac-

counting with him, and divide the profit of said two lots, but he declined to do so, and has ever since declined to do so, which acts are against good conscience; that he and the defendant had agreed to ·share in the net profits of said transactions;" that orator incurred certain expenses in and about making sale of his said premises, which ought to be stated in the account, and that if like expenses were incurred by the defendant, in the sale of his lot, orator is willing that the same shall be taken into the account, and that the net balance should be divided between the parties as was agreed to be done; and the bill concluded with a prayer for an accounting between the parties and for relief accordingly.

There exist, in our judgment, two reasons why the demurrer was properly sustained.

In the first place it was the duty of the complainant to allege some definite agreement between the parties, which when ascertained by the court might be decreed to be carried out.

The allegation as to the agreement is that the complainant proposed to the defendant that they should make a joint venture or partnership in reference to the two lots, and that they should participate in the net profits to be derived from the sale of them; that complainant's lot should be sold in a very short time while the uncertainty of the site of the exposition should continue to exist, and that defendant's lot should be held longer and sold as soon as said site should be located; that the defendant accepted the proposition and they then agreed with each other to participate in the net profits or losses arising out of the purchase and ownership of the lots. Such comprises all the material allegations as to the agreement.

True, it is alleged that after the complainant sold his lot "he applied to the defendant and offered to divide with him the net proceeds as they had agreed to do," and that the complainant always insisted in conversations·with the defendant "that he would insist upon an equal division of the net profits whenever he would sell his lot," and that

after the defendant had sold his lot the complainant again demanded that defendant should come to an accounting with him and " divide the profit of said two lots;" and that he and the defendant " agreed to share in the net profits of said transactions."

But such allegations are merely allegations of a claim of complainant of his understanding of what the contract was, which it is averred was repudiated by the defendant whenever asserted by the complainant.

The contract, therefore, was that the parties should " participate" in the profits.

An agreement to " participate " in contingent profits is even less certain than one to " divide," and does not mean to participate in equal proportions when it is uncertain from the whole contract that such was the intention of the parties.    Young v. Farwell, 46 Ill. App. 299; same case, 146 Ill. 466.

To participate in something is to share in it; to receive or give a part or share of it.    Century Dictionary.

What proportion or share would a court proceed to decree should be given to the complainant upon a finding that he was entitled to " participate" with the defendant in the alleged profits?

Manifestly a finding of that sort alone would furnish no sufficient basis for a decree of performance to stand upon; and the bill furnishes no allegation upon which any other finding could be made.

We might, perhaps, omit discussion of the other question prominently presented to us, that the agreement, not being in writing, is within the statute of frauds.

That the benefit of the statute of frauds, as a defense, can be taken by demurrer when it affirmatively appears from the bill that the agreement relied upon is not evidenced by a writing duly signed, is clear.    Speyer v. Desjardins, 144 Ill. 641; Switzer v. Skiles, 3 Gil. 529; Story's Equity Pl. (9th Ed.), Sec. 762, note a.

It is expressly averred in the bill that the agreement was not in writing, and that the complainant rested securely on the oral agreement entered into.

Goldstein v. Nathan.

As to whether agreements with reference to lands bought with partnership funds, or previously formed agreements to buy lands for speculative purposes and treat them as partnership property, are, or are not within the statute of frauds, is not the question before us.

Here, according to the bill, each party was the owner in severalty of a separate lot of land at the time the alleged agreement was made, and the alleged agreement had for its subject-matter the lands so severally owned, to wit, a right to a share or interest in whatever increased value should accrue to the lands during the time that such ownership should continue.

Could it be successfully contended that if the alleged agreement were valid and binding, either party to it might have sold his lot at any price he saw fit, and have accounted to the other only for what he obtained, irrespective of the true value of the lot?

The complainant substantially concedes that such a course would have been unwarranted under the alleged agreement, by averring that he obtained the consent and approval of defendant to the sale he made of his lot.

To confer upon a party a lawful right to a share in the contingent profit arising from an existing ownership of land at a stipulated value, and a subsequent sale of it at a price to be ascertained by its future value, is to give to him an interest in or concerning the land itself, and is clearly within the statute. Chap. 59, Sec. 2, Rev. Stat. Ill.

There is nothing to the contrary to be found in Speyer v. Desjardins, *supra;* nor in Morton v. Nelson, 145 Ill. 586; nor in Voss v. Strong, 144 Ill. 108; but on the contrary, each of those cases, although upon unlike facts, is in harmony with the other, and with our conclusion.

The statute does not limit itself to the sale of lands, but extends to contracts for "any interest in or concerning them."

It is said in Browne on the Statute of Frauds, Sec. 229, "that the statute extends to and embraces equitable as well as legal interests in land, is well settled;" and, Ibid., Sec. 267, that "it extends to any agreement by which rights

already acquired in real estate under a deed are enlarged or qualified."

A more extended discussion seems to be needless in view of the facts of the case as alleged; and the decree dismissing the bill is affirmed.